Case No. 5:20-cv-06889-EJD

_____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

_____

ANTHONY NOBLES,
*Appellant*,
v.
MUFG UNION BANK, N.A.,
*Appellee.*

_____

Appeal from the U.S. Bankruptcy Court

Honorable Elaine Hammond, Judge Presiding

Adversary Case No. 17-05044

_____

**APPELLANT'S OPENING BRIEF**

_____

John van Loben Sels (SBN 201354)
**FISH IP LAW, LLP**
2603 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 943-8300 | Facsimile: (949) 943-8358
jvanlobensels@fishiplaw.com

*Attorneys for Appellant*,
Anthony Nobles

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................. 1

II.    APPELLANT HAS STANDING TO BRING THIS APPEAL.................. 4

III.   JURISDICTIONAL STATEMENT ....................................................... 4

IV.    ISSUES ON APPEAL ........................................................................... 4

V.     STATEMENT OF FACTS .................................................................... 5

VII.   LEGAL STANDARDS ......................................................................... 8

VIII.  LEGAL ARGUMENT .......................................................................... 9

A.   The Bank Lacks Article III Standing To Seek Declaratory Judgment Pursuant
     To 28 U.S.C. § 2201 ....................................................................... 9

      i.   There Exists No Injury In Fact Between Appellant And The Bank........10

      ii.  No Causal Connection Exists Between Any Act By Appellant A Any
           Harm The Bank May Have Suffered ...................................................12

      iii.  No Harms Can Be Redressed By The Relief Sought ..........................13

B.   Appellant Paid Valid Consideration For His Shares......................................15

C.   The Bankruptcy Court's Entry Of Judgment In Violation Of Fed. R. Civ. P.
     52 Was Clear Error ......................................................................................18

IX. CONCLUSION ......................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*,
890 F.3d 986 (Fed. Cir. 2018)............................................................................ 8

*Am. Fed'n of Tchrs. v. DeVos*,
484 F. Supp. 3d 731 (N.D. Cal. 2020) .....................................................9, 11, 13

*Barrientos v. Wells Fargo Bank, N.A.*,
633 F.3d 1186 (9th Cir. 2011) ........................................................................... 7

*Boorstein v. Men's J. LLC*,
2012 WL 2152815 (C.D. Cal. June 14, 2012)...................................................14

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ........................................................................... 9

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ..........................................................................................13

*Decker v. Advantage Fund (in Re Jts Corp.)*,
2001 Bankr. LEXIS 2066 (Bankr. N.D. Cal. May 22, 2001)...........................21

*In re Executive Growth Investments, Inc.*,
40 B.R. 417 (Bankr. C.D. Cal. 1984)...............................................................21

*In re Farmers Markets, Inc.*,
792 F.2d 1400 (9th Cir. 1986) .........................................................................20

*Fiedler v. Clark*,
714 F.2d 77 (9th Cir. 1983) .............................................................................. 9

*Finisar Corp. v. Capella Photonics, Inc.*,
2021 WL 810227 (N.D. Cal. Mar. 3, 2021) ...................................................... 8

*Foothill Capital Corp. v. Clare's Food Mkt. (In re Coupon Clearing Serv.)*,

    113 F.3d 1091 (9th Cir. 1997) ...........................................................................20

*Freeman v. DirecTV, Inc.*,

    457 F.3d 1001 (9th Cir. 2006) ........................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

    528 U.S. 167 (2000) .........................................................................................10

*Gaine v. Austin*,

    58 Cal. App. 2d 250 (1943) .......................................................................16, 18

*In re Godon, Inc.*,

    275 B.R. 555 (Bankr. E.D. Cal. 2002) .............................................................. 9

*In re Golden Plan of California, Inc.*,

    37 B.R. 167 (Bankr. E.D. Cal. 1984) ...............................................................20

*Gov't Employees Ins. Co. v. Dizol*,

    133 F.3d 1220 (9th Cir.1998) ........................................................................... 8

*Intramerican Oil & Minerals, Inc. v. Mid-America Petroleum, Inc. (In re Mid-*
    *America Petroleum, Inc.)*,

    71 B.R. 140 (Bankr. N.D. Tex. 1987) ..............................................................21

*Johnson v. Weinberger*,

    851 F.2d 233 (9th Cir. 1988) ...........................................................................13

*In re Lemons & Assocs., Inc.*,

    67 B.R. 198 (Bankr. D. Nev. 1986) .................................................................21

*Lewis v. Casey*,

    518 U.S. 343 (1996) ......................................................................................... 9

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992) ...................................................................................10, 13

*Matter of Fondiller*,

    707 F.2d 441 (9th Cir. 1983) ........................................................................... 4

*Microsoft Corp. v. DataTern, Inc.*,
   755 F.3d 899 (Fed. Cir. 2014).............................................................................. 8

*In re Mortg. Store, Inc.*,
   773 F.3d 990 (9th Cir. 2014) ............................................................................... 7

*Murray v. Time Inc.*,
   2012 WL 3634387 (N.D. Cal. Aug. 24, 2012) ...................................................14

Murray v. Time Inc.,
   554 F. App'x 654 (9th Cir. 2014) .......................................................................14

*Navrides v. Zurich Ins. Co.*,
   5 Cal. 3d 698 (1971) ...........................................................................................17

*O. A. Graybeal Co. v. Cook*,
   111 Cal. App. 518 (Dist. Ct. App. 1931)............................................................16

*Pajaro Dunes Rental Agency v. Spitters (In re Pajaro Dunes Rental Agency)*,
   174 B.R. 557 (Bankr. N.D. Cal. 1994)............................................................9, 16

*Perrie v. Perrie*,
   2016 WL 1090577 (E.D. Cal. Mar. 21, 2016)................................................9, 10

Perrie v. Perrie,
   727 F. App'x 673 (Fed. Cir. 2018) ..................................................................9, 10

*In re Pizza of Haw., Inc.*,
   761 F.2d 1374 (9th Cir. 1985)) ............................................................................ 7

Principal Life Ins. Co. v. Robinson,
   394 F.3d 665 (9th Cir. 2005) ............................................................................7, 8

*Rabkin v. Oregon Health Sciences Univ.*,
   350 F.3d 967 (9th Cir. 2003) ............................................................................... 7

*Raines v. Byrd*,
   521 U.S. 811 (1997) ............................................................................................. 8

*In re Saito Bros Inc.*,

560 B.R. 540 (Bankr. D. Idaho 2016) .................................................. 9

*In re Seymour*,

2013 WL 1736471 (B.A.P. 9th Cir. Apr. 23, 2013) .......................... 8

In re Seymour,

601 F. App'x 572 (9th Cir. 2015) ..................................................... 8

*Simeonoff v. Hiner*,

249 F.3d 883 (9th Cir. 2001) ......................................................9, 19

*United States v. Jones*,

176 F.2d 278 (9th Cir. 1949) ........................................................14

*Veal v. Am. Home Mortg. Servicing, Inc.*,

450 B.R. 897 (9th Cir. BAP2011) ................................................... 8

*In re Wardle*,

2006 WL 6811026 (B.A.P. 9th Cir. Jan. 31, 2006) ....................11, 12

*In re Zappos.com, Inc.*,

888 F.3d 1020 (9th Cir. 2018) ......................................................10

**Statutes**

11 U.S.C. § 363 ...............................................................................21

11 U.S.C. § 541 ........................................................................passim

11 U.S.C. § 541(a) ....................................................................passim

28 U.S.C. § 158(a)(1)........................................................................ 4

28 U.S.C. § 2201...............................................................3, 4, 5, 18

28 U.S.C. §1334(b) .......................................................................... 4

**Other Authorities**

Cal. Corp. Code § 409..............................................................passim

Fed. R. Bankr. P. 8013 ................................................................... 7

**Rules**

FED. R. CIV. P. 52(a) ................................................................5, 9, 19, 21

Appellant Anthony Nobles ("Appellant" or "Nobles"), and file this Brief in Support of his Appeal of the Bankruptcy Court's Order After Trial (Appx. 478-486) and Judgment (Appx. 487-489) entered on September 9, 2020 ("Appeal"). Defendant timely filed his Notice of Appeal and Statement of Election on September 22, 2020 (Appx. 490-507).

## I.    INTRODUCTION

The judgment of the Bankruptcy Court in the adversary proceeding below initiated by MUFG Union Bank, N.A. ("Appellee" or the "Bank") against debtor Robert Brower, Sr. ("Brower" or "Debtor") must be reversed because the Bankruptcy Court wrongfully determined Appellant's 50,000 shares of non-debtor Coastal Cypress Corporation ("Coastal") were the property of Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(a).  Brower filed for Chapter 11 bankruptcy on March 11, 2015, and he was a shareholder in, and Director and President of Coastal. Appx. 0055-0056; 0354. In addition, Debtor was the personal guarantor of a $5 million loan to a separate entity Chateau Julien, a winery brand that did business with and leased land from Coastal.  Appx. 0354. When Chateau Julien could not satisfy the outstanding balance of the loan, the Bank sought repayment from Debtor. Appx. 0373. Debtor subsequently filed bankruptcy. Appx. 0056. Appellant's Coastal shares are wholly outside the scope of property that can be claimed by Brower's bankruptcy estate under 11 U.S.C. § 541 because, at the commencement of the bankruptcy, Brower held no legal or equitable interest in Appellant's Coastal shares. Appx. 0292-0402. Nor did he ever. Section 541(a) is explicit that the bankruptcy estate is limited to such property in which the debtor held a legal or equitable interest at the commencement of the bankruptcy. It is not intended to expand the estate's interests in property beyond those the debtor held at the commencement of his bankruptcy. Furthermore, even if Nobles' purchase of

1

shares from Coastal was void for lack of consideration under Cal. Corp. Code § 409, the shares would have reverted back to Coastal's treasury and, are not considered property in which debtor held an interest.  Whether Appellant's purchase of shares was void, the Bankruptcy Court abused its discretion by declaring judgment for the Bank that Nobles' Coastal shares are the property of Brower's bankruptcy estate.

In addition to the claims asserted against Debtor in the adversary proceeding, the Bank asserted claims against other non-debtor shareholders of Coastal, including Appellant.  Appx. 0001-0009. Specifically, the Bank named Nobles as a defendant, seeking declaratory judgment that Appellant's shares in Coastal were property of Debtor's bankruptcy estate under 11 U.S.C. § 541.  Appx. 0007. On summary judgment, the Bankruptcy Court deemed that in the transaction by which Appellant received his 200,000 Coastal shares, 150,000 of those shares were void for lack of consideration because, after Appellant delivered $200,000, the full purchase price of the 200,000 shares, to Coastal's agent Brower, $150,000 of those funds were loaned to Chateau Julian without first entering a Coastal bank account. Appx. 0276-0290.  However, that is not the law.  The record establishes Nobles delivered the full purchase price of his shares to Coastal by delivering the funds to its agent Brower, which were recorded in Coastal's books as paid-in capital. Appx. 0300; 0358; 0409; 0418.  Any subsequent transactions involving the funds Nobles delivered to Coastal have no bearing on Nobles' prior purchase of 200,000 shares from Coastal.  Moreover, even if Nobles' purchase of 150,000 Coastal shares was void for lack of consideration, the Bankruptcy Court identified no fact or conclusion of law as the basis for determining those shares are somehow now property of Brower's bankruptcy estate.  As discussed herein, the Bankruptcy Court abused its discretion in entering judgment in favor of the Bank's Claim against Appellant that *all* of Appellant's shares are the property of the Brower bankruptcy estate.

2

At trial, Appellant's remaining 50,000 shares, which were not divested from Appellant in the Bankruptcy Court's summary judgment ruling, remained at issue. As a result of the subsequent bench trial, the Bankruptcy Court seized Appellant's remaining 50,000 shares. Appx. 0496-0502. However, in so doing, the Bankruptcy Court failed to address how, even if the transaction between Appellant and Coastal for the purchase of shares was void, those shares were not simply returned to Coastal's treasury, but instead deemed a part of the bankruptcy estate. *Id.*

The Bank's claims amount to little more than the Bank's attempt to overreach beyond the Debtor's bankruptcy estate to gain control of Coastal without regard for Coastal's non-debtor shareholders, including Appellant. At trial, the Bank presented no basis in law or fact that supports the transmogrification of Appellant's shares, which were issued to him directly from Coastal, to property of the bankruptcy estate. Appx. 0171; 0344-0445; 0496-0502. Neither Coastal nor Nobles are bankruptcy debtors, and the Bank is not a creditor of Coastal or Nobles. Moreover, contrary to the Bankruptcy Court's findings, the evidence at trial establishes Nobles' purchase of the Coastal shares was legitimate, based on fair consideration, and the Bank was not a party to the transaction between Coastal and Nobles.  Appx. 0143; 0145-159; 0171; 0300; 0358; 0409; 0418. Still further, Debtor never had any ownership interest in the shares. For these reasons, and as discussed herein, the Bank lacks standing to bring the claim for declaratory relief under 28 U.S.C. § 2201 as to ownership of Appellant's Coastal shares, which at the time of the Bank's filing of the adversary complaint, were already issued to Nobles directly from Coastal.

In addition, during the bench trial at which Appellant's 50,000 shares in Coastal were at issue, the Bankruptcy Court ignored the documentary and testimonial evidence of the only individuals who were present to the transaction between Appellant and Coastal, and determined Appellant provided no consideration to Coastal in exchange for his shares.  Appx. 0143; 0145-159; 0171;

3

0300; 0358; 0409; 0418; 478-486. This key conclusion was an abuse of discretion under the facts in the record as discussed below.  Specifically, the Bankruptcy Court relied on unrelated, subsequent acts by Debtor (now deceased), which took place outside the scope of Appellant's purchase of shares from Coastal to determine Appellant's purchase of shares lacked consideration under CAL. CORP. CODE § 409. This conclusion was clearly erroneous determination ignores the evidence establishing that consideration for the shares was provided by Appellant to Coastal when Appellant wired the funds to Coastal's agent Debtor, and the Bankruptcy Court's judgment must be overturned.

## II.    APPELLANT HAS STANDING TO BRING THIS APPEAL

"Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order." M*atter of Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983).  As a direct result of the Bankruptcy Court's order and judgment after trial, Appellant was divested of his ownership of 50,000 shares in Coastal. Appx. 0478-0486.  As Appellant was divested of the value of those shares by the Bankruptcy Court's order and judgment, Appellant was directly and adversely affected pecuniarily by an order of the Bankruptcy Court.  Therefore, Appellant has standing to bring this appeal.

## III.    JURISDICTIONAL STATEMENT

The Bankruptcy Court had jurisdiction to hear adversary proceedings arising out of Debtor's bankruptcy pursuant to 28 U.S.C. §1334(b), but exceeded its jurisdiction by hearing and ruling on the Plaintiff Bank's claim for declaratory judgment against Appellant pursuant to 28 U.S.C. § 2201 and seizing Appellant's property, which was not sufficiently connected to Debtor's estate. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1).

## IV.    ISSUES ON APPEAL

1. Whether the Bank has standing to seek declaratory judgment pursuant to 28 U.S.C. § 2201 that Appellant's shares of stock in Coastal fall within

4

the bankruptcy estate of Debtor under 11 U.S.C. § 541(a)(1).

2. Whether the Bankruptcy Court abused its discretion in finding that Appellant's 50,000 shares of stock in Coastal Cypress Corporation ("Coastal") are void for lack of consideration pursuant to California Corporations Code § 409.

3. Whether the Bankruptcy Court violated FED. R. CIV. P. 52(a) by failing to identify any findings of fact or separately state its conclusions of law under 28 U.S.C. § 2201 or 11 U.S.C. § 541(a) for its order and judgment declaring Appellant's 200,000 shares of Coastal stock property of the bankruptcy estate.

## V.   STATEMENT OF FACTS

Debtor Robert Brower Sr. and his spouse, Patricia Brower, established a wine estate in Monterey County, California in 1982. The assets and operations of their business were split between multiple privately held corporations with Coastal Cypress Corporation owning the most valuable asset: the real property on which the wine estate was situated. On or about January 31, 2011, Appellant executed a stock purchase agreement for the purchase of 200,000 shares of stock from Coastal, for which the closing date was February 4, 2011. Appx. 0392.  On January 31, 2011, Appellant paid the full purchase price of $200,000 for his shares in Coastal, wiring those funds directly to Coastal's agent, Debtor form Nobles' Technos Development, LLC account. Appx. 0149; 0162; 0201; 0202.  In return, Appellant received ownership of 200,000 shares in Coastal and stock certificates evidencing that ownership (later reissued in 2017 when Coastal attempted a merger and became a Delaware corporation). Appx. 0149-0159; 0164. The record establishes that $50,000 of the funds delivered to Coastal's agent, Debtor, the

equivalent of purchase price of 50,000 Coastal shares, were immediately deposited into a Coastal account via check number 8948. Appx. 0151; 0203.

The Browers also operated Chateau Julien, Inc., a wine estate located in Monterey County, which leased the land on which it conducted business from Coastal. App. 0447. Prior to the commencement of Brower's bankruptcy, the Bank loaned $4.85 million to Chateau Julien, which was guaranteed by Brower. Appx. 0004; 00056. Chateau Julien and Brower, however, failed to satisfy the balance of the loan and, in September 2014, the Bank initiated a lawsuit in the Superior Court of California for the County of Monterey against Brower and Chateau Julien for breach of contract and Brower's guaranty. *Id*. The trial in the state court resulted in a judgment in favor of the Bank in an amount in excess of $5.4 million, for which the Bank alleged in it amended complaint Brower was liable. *Id*. On March 11, 2015, Brower filed a voluntary petition for Chapter 11 bankruptcy in the Northern District Bankruptcy Court. Appx. 0004; 0058.

On May 11, 2017, Appellee initiated the adversary proceeding against defendants Robert Brower, Sr., Patricia Brower, Coastal Cypress Corporation (California), Coastal Cypress Corporation (Delaware), American Commercial Properties, Inc., Nobles, Wilfred "Butch" Lindley, Richard Babcock and Patricia Brower Trust. Appx. 0001. The Bank sought declaratory judgment from the Bankruptcy Court determining that Appellant's shares in Coastal were the property of Debtor's bankruptcy estate under 11 U.S.C. § 541(a). Appx. 0017-0018.

The parties filed motions for summary judgment (Appx. 0067; 0098) and, on November 20, 2019, the Bankruptcy Court issued a Memorandum Decision on Motion for Summary Judgment on the Plaintiff's motion (the "MSJ Ruling"). Appx. 0275-0291. The MSJ Ruling voided the transfers of shares belonging to Messrs. Lindley and Babcock for lack of consideration. *Id*. at 278-290. Similarly, 150,000 of Appellant's shares were deemed void for lack of consideration, which left for trial the question of whether Appellant's remaining 50,000 shares were

6

valid. *Id*. At the bench trial, the Bankruptcy Court found that Appellant's 50,000 shares were void for lack of consideration under Cal. Corp. Code § 409 and entered judgment against Appellant in favor of the Bank, awarding the Bank the relief sought in its amended complaint, declaratory judgment that all of Appellant's shares in Coastal were property of the bankruptcy estate under 11 U.S.C. § 541. Appx. 0480-0482; 487-489.

On October September 22, 2020, Appellant filed his Notice of Appeal. Appx. 0490.

## VI.   STANDARD OF REVIEW

A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order or degree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. In reviewing an order or judgment of the bankruptcy court, the Court has the "power to consider any issue presented by the record even if the issue was not presented to the bankruptcy court." *In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1379 (9th Cir. 1985)). "Findings of fact are reviewed under the clearly erroneous standard of review and legal conclusions are reviewed de novo." *In re Mortg. Store, Inc.*, 773 F.3d 990, 994 (9th Cir. 2014). Where a court reviews a conclusion *de novo*, it "review[s] the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006). No deference is given to the district court. *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011); *Rabkin v. Oregon Health Sciences Univ.*, 350 F.3d 967, 971 (9th Cir. 2003) ("When *de novo* review is compelled, no form of appellate deference is acceptable.").

Further, the Court "review[s] discretionary decisions about the propriety of hearing of hearing declaratory judgment actions for abuse of discretion." Pr*incipal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). "However, if the district court does not provide reasoning under the discretionary prong of the

inquiry, we must remand the case to allow the district court to properly exercise its discretion." *Id. See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir.1998) ("If on appeal the record is devoid of reasoning ... the case must be remanded to the district court to record its reasoning in a manner sufficient to permit the 'proper application of the abuse of discretion standard on appellate review.'")

## VII.   LEGAL STANDARDS

"Standing is a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" *In re Seymour*, 2013 WL 1736471, at *5 (B.A.P. 9th Cir. Apr. 23, 2013), aff'd, 601 F. App'x 572 (9th Cir. 2015) (quoting *Veal v. Am. Home Mortg. Servicing, Inc.*, 450 B.R. 897, 906 (9th Cir. BAP2011)). "Federal courts have authority to hear a case only if there is an actual case or controversy." *Finisar Corp. v. Capella Photonics, Inc.*, 2021 WL 810227, at *4 (N.D. Cal. Mar. 3, 2021), citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The threshold question for declaratory judgment jurisdiction is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Microsoft Corp. v. DataTern, Inc*., 755 F.3d 899, 903 (Fed. Cir. 2014). "A plaintiff seeking a declaratory judgment bears the burden of demonstrating that a case of actual controversy existed at the time the declaratory action was filed. That requires a showing of injury-in-fact, connection between the challenged conduct and the injury, and redressability by the requested remedy." *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc*., 890 F.3d 986, 990 (Fed. Cir. 2018).

"Shares may be issued: For such consideration as…money paid." CAL. CORP. CODE § 409(a). "It is well established that if an agent has authority to receive or collect payment, giving money to that agent is equivalent to payment to the principal himself." *Pajaro Dunes Rental Agency v. Spitters (In re Pajaro*

8

*Dunes Rental Agency*), 174 B.R. 557, 579 (Bankr. N.D. Cal. 1994). "In bench
trials, a court must "find the facts specially and state separately its conclusions of
law thereon." *Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001) (quoting Fed.
R. Civ. P. 52(a)).

## VIII.   LEGAL ARGUMENT

### A. The Bank Lacks Article III Standing To Seek Declaratory Judgment Pursuant To 28 U.S.C. § 2201

The Bankruptcy Court lacked jurisdiction to adjudicate the issue of
ownership over Appellant's shares because, at the time the Bank filed its complaint
against Appellant, no justiciable case or controversy existed between them.
"Constitutional standing is a jurisdictional limit on the power of federal courts and
can never be waived." *In re Godon, Inc*., 275 B.R. 555, 564 (Bankr. E.D. Cal.
2002). A plaintiff has standing if he or she "is the proper party to bring the matter
to the court for adjudication." *In re Saito Bros Inc*., 560 B.R. 540, 546 (Bankr. D.
Idaho 2016) (citing *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115,
1122 (9th Cir. 2010). "[T]he Declaratory Judgment Act does not provide an
independent jurisdictional basis for suits in federal court...It only permits the
district court to adopt a specific remedy when jurisdiction exists." *Perrie v. Perrie*,
2016 WL 1090577, at *6 (E.D. Cal. Mar. 21, 2016), aff'd, 727 F. App'x 673 (Fed.
Cir. 2018) (quoting *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983)). Here,
Appellant was not a debtor in the bankruptcy, and Debtor never held an ownership
interest in the shares such that they could be deemed the property of the
bankruptcy estate. Further, the Bank was not a party to the transaction between
Appellant and Coastal for the purchase of shares. Appx. 0142-0159. "'Standing is
not dispensed in gross.' Rather, it must be proven for each claim and each form of
relief sought." *Am. Fed'n of Tchrs. v. DeVos*, 484 F. Supp. 3d 731, 743 (N.D. Cal.
2020) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).  To have Article III
standing,

a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The Bank can show none of these as to its Claim 1 against Appellant.

    **i.   There Exists No Injury In Fact Between Appellant And The Bank**

      The Bank's complaint failed to allege any actual injury in fact traceable to a challenged action of Appellant and, therefore, no actual case or controversy existed at the commencement of the adversary proceeding. Appx. 0011-0021. "The first requirement to establish standing is an "injury in fact," defined as an 'invasion of a legally protected interest.'" *Perrie v. Perrie*, 2016 WL 1090577, at *4 (E.D. Cal. Mar. 21, 2016), aff'd, 727 F. App'x 673 (Fed. Cir. 2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Here, the Bank has no legally protected interest in Appellant's 50,000 Coastal shares. Further, the Bank alleged no invasion of its legally protected interests in ***Debtor's*** property or the property of the bankruptcy estate as a result of Appellant's ownership of 50,000 shares issued directly from Coastal to Appellant. Appx. 0142-0159. Bank is a creditor of Debtor's estate. Absent actual allegations of injury against Appellant in the complaint, one can only speculate the Bank's position is it would benefit directly from the value of any property deemed the property of the estate. However, that a claimant would benefit from additional property it could receive if it were simply awarded property of a third party does not establish an actual or legally protected interest between a claimant and a defendant. Moreover, where the injury between the claimant and defendant is left to speculation, the claimant lacks Article III standing. See *Am. Fed'n of Tchrs. v. DeVos*, 484 F. Supp. 3d at 742 (N.D. Cal.

10

2020) (holding that where speculative inferences are needed to establish actual injury, standing will not be found).

Further, estate property is limited to property in which ***Debtor*** held a legal or equitable ownership interest at the commencement of the bankruptcy. 11 U.S.C. § 541(a). At the commencement of the bankruptcy, all of Appellant's 200,000 shares had already been issued from Coastal to Appellant. Appx. 0142-0164; 0167-0172; 0180-0201. They simply were not property in which Debtor held an ownership interest of any kind.  As such, on their face, Appellant's shares are squarely outside the scope of the bankruptcy estate.  As a creditor of that estate having no legal relationship with Appellant, there exists no actual harm to the Bank, pecuniary or otherwise, and certainly none that was alleged in the complaint, due to Appellant's ownership of shares in Coastal, or any other act taken by Appellant. Rather, the Bank's complaint seeks to invent an injury where there is none.

In *In re Wardle*, 2006 WL 6811026, at *1 (B.A.P. 9th Cir. Jan. 31, 2006), the Ninth Circuit affirmed the Bankruptcy Court's "ruling that the trustee of a corporation's shareholder did not have standing to avoid transfers made from a nondebtor corporation to another corporate investor and purported shareholder..." *Id*.  *In re Wardle* concerned the transfer of funds made directly from Consolidated, a non-debtor corporation, to a shareholder who was not a debtor in the bankruptcy. In the adversary proceeding brought in connection with the debtor shareholder's Chapter 7 bankruptcy, the Ninth Circuit ruled the trustee could not avoid the transfer because, at minimum,

> ***the transferred funds were not property of the estate pursuant to § 541 because there is no evidence that the funds ever belonged to the debtors.***
> As the bankruptcy court noted, the funds were property of Consolidated as evidenced by the fact that they were transferred from Consolidated's bank account. And as appellee argues, an alter ego determination will not somehow transmogrify Consolidated's funds into property of debtors' estate.

11

*Id.* (emphasis added). Both the trustee in *In re Wardle* and the Bank in this case attempted to create a controversy where none exists by imputing ownership of non-debtor property to the debtor's bankruptcy estate.  In *In re Wardle*, Consolidated was a non-debtor corporation.  *Id.* Here, Coastal is a non-debtor corporation. The funds at issue in *In re Wardle* were transferred from Consolidated to non-debtor shareholders of the corporation. *In re Wardle*, *supra*, at *1. Here, the shares at issue were issued directly from Coastal to Nobles, a non-debtor shareholder of the corporation. Appx. 0142-0171. In *In re Wardle*, the funds transferred from Consolidated to the non-debtor shareholder were never the property of the debtor shareholder. *In re Wardle, supra*, at *1. Such is the case here with the shares issued by Coastal to Nobles.  Appx. 0143; 0145-159; 0171; 0300; 0358; 0409; 0418. At no point in time were they the property of Debtor. Rather, the Bank conceded and acknowledged that the shares were in fact issued directly from Coastal to Nobles. Appx. 0346-0347.

Moreover, the Bank alleged no legally protected interest that it ever held in Appellant's Coastal shares, whether before or after their issuance to Appellant. Appx. 0011-0021. Nor did the Bank allege it was a party to the transaction for Appellant's purchase of the shares. *Id.* As such, it is impossible to identify any legally protected interest of the Bank in Appellant's shares. This is because none ever existed. Therefore, this element of Article III standing is not met.

### ii. No Causal Connection Exists Between Any Act By Appellant And Any Harm The Bank May Have Suffered

There is no traceable injury between Appellant's ownership of 50,000 shares in Coastal and the Bank's rights as a creditor in the property of the bankruptcy estate. "To establish a traceable injury, there must be 'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Am. Fed'n of Tchrs. v. DeVos*, 484 F.

Supp. 3d 731, 742 (N.D. Cal. 2020) (quoting *Lujan*, 504 U.S. at 560). The injury alleged by the Bank as to any conduct between Appellant and the Bank is simply unstated in the complaint and, at best, speculative.  Further, the Bank alleged no causal connection between its rights in ***Debtor's*** property and Appellant's purchase or ownership shares from the non-debtor Coastal, which occurred prior to the filing of the bankruptcy. Appx. 0011-0022. "When '[s]peculative inferences' are necessary ... to establish either injury or the connection between the alleged injury and the act challenged, standing will not be found." *Am. Fed'n of Tchrs.*, 484 F. Supp. 3d at 742 (N.D. Cal. 2020) (citing *Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir. 1988)).  Such is the case here.

Moreover, even if the Bank's position is that it suffers harm because Debtor's estate is insufficient to make the Bank whole as to the outstanding amount of the loan to Chateau Julian for which Debtor was a personal guarantor, the Bank alleges no causal connection between that harm arising out of the creditor-debtor relationship between the Bank and Debtor, and Appellant's ownership of shares of a non-debtor corporation. This is because there is none. As such, the Bank has failed to show traceable injury between any act of Appellant and any harm the Bank may have suffered.  Therefore, this element of Article III standing is not met.

### iii.   No Harms Can Be Redressed By The Relief Sought

"Finally, it must be "likely" as opposed to merely "speculative" that the injury will be 'redressed by a favorable decision.'" *Am. Fed'n of Tchrs*., 484 F. Supp. 3d at 742 (N.D. Cal. 2020) (quoting *Lujan*, 502 U.S. at 560). In addition, "If a plaintiff is seeking injunctive or declaratory relief, the plaintiff must demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way." *Am. Fed'n of Tchrs., supra* (quoting C*ity of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). Here, the relief sought by the Bank cannot redress any of the Bank's purported harms. As discussed above, this is because the Bank has not alleged any conduct

on the part of *Appellant* by which it was actually harmed.  Appx. 0011-0022..
Accordingly, there simply exists no harm by Appellant for which redress is
warranted. As such, any declaratory relief granted to Bank against Appellant would
be punitive against Appellant and create a categorically inequitable result. *See
United States v. Jones*, 176 F.2d 278, 280 (9th Cir. 1949)("no declaration [under
the Declaratory Judgment Act] should be made, unless it serve a useful, practical
purpose, or when no beneficial result would follow."); see also, *Murray v. Time
Inc.*, 2012 WL 3634387, at *4 (N.D. Cal. Aug. 24, 2012), aff'd, 554 F. App'x 654
(9th Cir. 2014) ("the alleged violation was not the cause of the purported economic
injury, and [sic] the plaintiff's theory of economic injury did not provide him with
statutory standing to sue.") (quoting *Boorstein v. Men's J. LLC*, 2012 WL 2152815,
at *3 (C.D. Cal. June 14, 2012).

Besides the clear lack of harm by Appellant to Bank's rights as a creditor of
Chateau Julien, and thereby Debtor as its personal guarantor, any harms the Bank
have suffered as a result of Chateau Julien's default on the loan have already been
substantially redressed by the creation of the bankruptcy estate, and the Bank's
status in that proceeding as a creditor of the estate. Appx. 0034 at ln. 10-13.

Further, the Bank cannot demonstrate that the declaratory relief sought
would prevent similar wrongs as those alleged in the complaint. Appellant is not
the party that defaulted on the loan issued by the Bank—Chateau Julien is.  Appx.
0006; 0017. Appellant is not the guarantor who must satisfy the balance of loan—
Debtor was. *Id.* There simply exists no reasonable basis in fact or law that supports
the position that divesting Appellant of his shares in a separate, non-debtor entity
will prevent a future default by Chateau Julien.  This power and relief already rests
with the Bank, which may deny future applications by Chateau Julien for a loan.
Nor will divesting Appellant of his shares in Coastal prevent future failures of
Debtor to satisfy outstanding balances for loans to the bank for which he is a
guarantor. First, Debtor is now deceased and obviously incapable of taking any

action with respect to any loan or guaranty as to the Bank. Second, Debtor's bankruptcy estate already exists, and the Bank is a creditor of that estate. Appx. 0011. In short, the Bank already has access to all of Debtor's property that he could have used to satisfy the Bank's loan.

Moreover, the Bank's only alleged harms arise out of the Bank's rights as a creditor of Chateau Julien and Debtor as guarantor of Chateau Julien's loan. Appx. 0011-0022. None of the harms arise out of Appellant's ownership of shares in the non-debtor Coastal. As such, there are no harms between the Bank and Appellant that can be redressed by a declaratory judgment. Therefore, this element of Article III standing is not met.

For the foregoing reasons, the Bank failed to plead facts that establish any injury in fact between Appellant and the Bank, any causal connection between Appellant and any alleged harms, or that any of the harms alleged in the complaint can be redressed by declaring Appellant's shares a part of the bankruptcy estate. As such, the Bank failed to satisfy any of the three elements of Article III standing, and the Bankruptcy Court lacked subject matter jurisdiction to hear the Bank's Claim 1 against Appellant. Therefore, the order and judgment of the Bankruptcy Court granting Bank's Claim 1 against Appellant divesting him of his 50,000 shares in Coastal must be reversed, and the Bank's Claim 1 dismissed for lack of standing. Furthermore, because the Bank lacked standing to bring a claim for declaratory relief against Appellant under Claim 1, all relief granted by the Bankruptcy Court to the Bank against Appellant under Claim 1 must be vacated.

## B. Appellant Paid Valid Consideration For His Shares

Even if the Bank is deemed to have standing to seek declaratory judgment as to Appellant's shares, the Bankruptcy Court abused its discretion in finding that Appellant failed to pay sufficient consideration for his shares when he delivered $200,000 to Coastal via a wire transfer directly to Coastal's agent, Debtor. Appx. 0149; 0162; 0201; 0202. For the reasons discussed herein, the Bankruptcy Court's

15

ruling declaring Appellant's shares void under California Corporations Code § 409 must be reversed as a matter of law.

"It can hardly be questioned that when the principal appoints an agent and authorizes him to receive payment for and on behalf of the principal, that payment has been made to the principal as a matter of law, when made to the agent." *O. A. Graybeal Co. v. Cook*, 111 Cal. App. 518, 530 (Dist. Ct. App. 1931). The record establishes Appellant executed a stock purchase agreement with Coastal for his shares (Appx. 0119-0133), and that he paid consideration to Coastal for those shares by delivering the full purchase price of those shares, $200,000, to Coastal's agent, Debtor, for the use and benefit of Coastal. Appx. 0409. Debtor had actual and apparent authority to act for and on behalf of Coastal and receive funds on Coastal's behalf.  Whether Debtor took some action *after* Appellant's delivery of the funds to Coastal in violation of a duty Debtor had to Coastal is independent of the issue of whether the funds were actually delivered by Appellant to Coastal for his shares.

Under California law, "An agent's authority may be proved by circumstantial evidence; and it may likewise be implied from circumstances." *Gaine v. Austin*, 58 Cal. App. 2d 250, 261 (1943) (internal citations omitted). There is no doubt here that Debtor was the agent of Coastal, vested with the power to receive Appellant's payment for shares on behalf of Coastal. E.g., Debtor engaged in sales and purchases (Appx. 0180-0195), entered into agreements with third parties (Appx. 0133; 0260), received and distributed funds (Appx. 0424), and issued stock from Coastal's treasury on behalf of Coastal (Appx. 0267-0279), signing those stock certificates as Coastal's President. *Id.* In light of the facts and circumstances, Debtor had authority to accept the payment from Appellant to Coastal on its behalf.

Further, "It is well established that if an agent has authority to receive or collect payment, giving money to that agent is equivalent to payment to the

16

principal himself." *Pajaro Dunes Rental Agency v. Spitters (In re Pajaro Dunes Rental Agency)*, 174 B.R. 557, 579 (Bankr. N.D. Cal. 1994) (citing *Navrides v. Zurich Ins. Co.*, 5 Cal. 3d 698, 706-07 (1971) ("If an agent with authority to receive payment by check payable to his principal also has authority to endorse his principal's name, it is clear that payment of the check will discharge the debtor. This situation is legally identical with that where the check is payable solely to the agent, since in each instance the agent has the power to endorse and negotiate the instrument").

The record supports the fact that Debtor was an agent of Coastal acting for and on behalf of Coastal throughout the course of the entire transaction by which Appellant purchased his shares in Coastal from Coastal. However, the Bankruptcy Court erred in focusing on the acts undertaken by Debtor *after* Appellant delivered funds for the purchase of his Coastal shares to conclude that the funds wired by Appellant to Debtor never made it Coastal and thus no consideration was paid. Appx. 0497-0502. This ruling, however, cannot be reconciled with the facts and applicable law.

Appellant delivered to Coastal, through its agent Debtor, the full amount of $200,000 due for the purchase of his shares. Appx. 0300; 0358; 0409; 0418. By doing so, Appellant provided Coastal sufficient consideration in exchange for his shares under *See* CAL. CORP. CODE § 409. Upon Appellant's payment, Coastal issued to Appellant stock certificates identifying the number of authorized shares issued directly from Coastal to Appellant. Appx. 0143. Despite these facts establishing Appellant paid due consideration for his shares, the Bankruptcy Court relied on Debtor's execution of a subsequent promissory note in favor of himself on February 4, 2011, to Coastal in the amount of $50,000, an amount equivalent to the purchase price of 50,000 Coastal shares. Appx. 0426. However Debtor may or may not have abused his authority in executing the note, that purported transaction between Debtor and Coastal was separate from and subsequent to Appellant's

17

delivery of funds to Coastal for his shares.  As such, the Bankruptcy Court's reliance on this subsequent and independent act by Debtor to determine the prior transaction between Appellant and Coastal lacked consideration was clearly erroneous.

Furthermore,

> As between two innocent persons, one of whom must suffer, the loss should fall on the principal who has armed the agent with apparent authority and thus has enabled him to obtain the advantage of the person with whom he trades, rather than on the purchaser, where the agent acts within the apparent scope of his authority and there is nothing in the transaction to put the purchaser on notice that the agent is exceeding his authority.

*Gaine v. Austin*, 58 Cal. App. 2d 250, 262 (1943). At all times relevant here, Debtor acted as Coastal's Director and President and, as a shareholder of Coastal himself with an interest in the company's success, exhibited no reason for Appellant to believe that Debtor acted outside the scope of his authority in providing Appellant his personal bank account number to accept payment for the shares (a fact to which Appellant was unaware at the time). Appx. 0409. For the foregoing reasons, Appellant's transfer of funds to Coastal by wire to the account of Debtor was sufficient consideration paid to Coastal in exchange for Appellant's shares.  As such, Appellant's payment to Coastal satisfied Cal. Corp. Code § 409(a)'s requirement that shares may be issued for money paid. Therefore, the Bankruptcy Court's ruling that Appellant's shares are void for lack of consideration must be reversed.

### C. The Bankruptcy Court's Entry Of Judgment In Violation Of FED. R. CIV. P. 52 Was Clear Error

The Bankruptcy Court's entry of judgment in favor of the bank against Appellant was clear error, because:  (a) the Bank's Claim against Appellant sought declaratory judgment pursuant to 28 U.S.C. 2201 that Appellant's 50,000 shares in

Coastal were property of Debtor's bankruptcy estate under 11 U.S.C. § 541; and (b) the Bankruptcy court entered judgment in favor of the Bank without stating any findings of fact or conclusions of law as to how or why, even if Appellant's shares were void, the shares then became property of the Debtor's bankruptcy estate. "In bench trials, a court must "find the facts specially and state separately its conclusions of law thereon." *Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001) (quoting FED. R. CIV. P. 52(a)).

> One purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision. This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions. Failure to comply with Rule 52(a) does not require reversal unless a full understanding of the question is not possible without the aid of separate findings.

*Id*. "Rather, we remand for further findings under Rule 52(a) when we cannot adequately resolve objections raised regarding validity of an award because the award is insufficiently detailed." *Id*.  Here, a full understanding of why and on what basis the Bankruptcy Court entered declaratory judgment that Appellant's shares are property of the bankruptcy estate is not possible without the aid of separate findings.

The Bankruptcy Court's Order and Memorandum identified its findings of fact and conclusions of law held that Appellant's shares were void for lack of consideration under Cal. Corp. Code § 409.  Appx. 0478-0486. However, the Bankruptcy Court made no findings of fact, nor any conclusions of law as to why Appellant's 50,000 shares in Coastal (or the 150,000 shares deemed void in its summary judgment ruling) were subject to declaratory judgment that all of Appellant's shares are property of the bankruptcy estate under 11 U.S.C. § 541. Appx. 0478-0486.  The Bankruptcy Court's failure to set forth its findings of fact and conclusions of law on this issue is critical because, at the commencement of

the bankruptcy, Debtor held no legal or equitable interest in any of Appellant's Coastal shares.  As such, the shares are outside the scope of property that may be claimed as part of the bankruptcy estate. *See* 11 U.S.C. § 541(a). Further, even if Appellant's shares in Coastal were void, they would be returned to Coastal's treasury and would not somehow be considered property of the bankruptcy estate. Such authorized but unissued shares are not, as a matter of law, 'property' within the meaning of § 541, and as determined by California law.  As a result, the shares cannot be declared property of Debtor's bankruptcy estate, and judgment should have been made in favor of Appellant.

The Bankruptcy Court's Order stated, "Plaintiff bears the ultimate burden to establish that the 50,000 shares of Coastal that Nobles asserts he owns are property of Debtor's bankruptcy estate." Appx. 0497. However, no findings of fact or conclusions of law were identified in the Order establishing the basis for the judgment that Nobles shares are property of the bankruptcy estate. *Id*. Rather, the analysis of Nobles' shares and what would become of them stopped at the Bankruptcy Court's finding the shares were void for lack of consideration under CAL. CORP. CODE § 409. Appx. 0499; 0502.

"11 U.S.C. § 541(a)(1) states that the 'estate is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Golden Plan of California, Inc*., 37 B.R. 167, 169 (Bankr. E.D. Cal. 1984). Section 541 "does not address the threshold questions of the existence and scope of the debtor's interest in a given asset." *In re Farmers Markets, Inc*., 792 F.2d 1400, 1402 (9th Cir. 1986). "The nature and extent of a debtor's interest in property is determined by state law, with the estate having no greater rights in property than those held by the debtor prior to bankruptcy." F*oothill Capital Corp. v. Clare's Food Mkt. (In re Coupon Clearing Serv.)*, 113 F.3d 1091, 1099 (9th Cir. 1997).

Here, the Bank provided no evidence – and the Bankruptcy Court cited none – that established or otherwise supported the theory that Appellant's shares

were ever owned by the Debtor, at the commencement of the bankruptcy or at any time thereafter.  This is because Debtor never held any legal or equitable interest in Appellant's shares. Appx. 0171; 0344-0445; 0496-0502. Section 541 "does not vest the estate with any greater property rights than those held by the debtor at the commencement of the case." *In re Lemons & Assocs., Inc.*, 67 B.R. 198, 208 (Bankr. D. Nev. 1986) (citing *In re Executive Growth Investments, Inc*., 40 B.R. 417, 423 (Bankr. C.D. Cal. 1984)). At the commencement of the bankruptcy proceeding, Appellant held legal title and interest in 200,000 Coastal shares, including the 50,000 Coastal shares at issue during trial. Appx. 0171; 0344-0445; 0496-0502. On this basis alone, none of Appellant's 200,000 Coastal shares, including the 50,000 Coastal shares at issue during the bench trial, can be deemed property of the bankruptcy estate.

Further, even assuming Appellant's ownership in the shares was void, the same shares would revert back to Coastal as authorized but unissued shares.  They would not simply be gifted or otherwise conveyed to Debtor as another shareholder in Coastal. Still further, "Authorized but unissued stock is not an asset of the corporation." *Decker v. Advantage Fund (in Re Jts Corp*.), 2001 Bankr. LEXIS 2066, at *13 (Bankr. N.D. Cal. May 22, 2001) (*citing Intramerican Oil & Minerals, Inc. v. Mid-America Petroleum, Inc. (In re Mid-America Petroleum, Inc.),* 71 B.R. 140, 141 (Bankr. N.D. Tex. 1987) (the debtor may issue shares of authorized stock without complying with the requirements of 11 U.S.C. § 363, because that section applies only to sales of property). Because authorized but unissued stock are not considered property at all, it is simply not possible that such stock could be considered property of the bankruptcy estate.  The Bank offered no fact or basis to assert that unissued stock in non-debtor Coastal could be considered the property of Debtor, a shareholder.  Nor did the Bankruptcy Court identify any fact or conclusion of law to support its judgment that such stock could or should be declared property of the bankruptcy estate.  Appx. 0495-502.

For the foregoing reasons, the Bankruptcy Court's judgment in favor of the Bank was made without sufficient findings of fact or conclusions of law separately stated in its Order, and in violation of Fed. R. Civ. P. 52(a).  As such, the Bankruptcy Court's judgment was entered in clear error. Therefore, if this Court finds that the Bank has Article III standing to seek declaratory judgment against Appellant, and that Appellant's purchase of shares from Coastal was void for lack of consideration, this issue should be reversed and remanded back to the Bankruptcy Court for further findings.

## IX.    CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the judgment of the Bankruptcy Court and issue and order that the Bank lacks standing to bring its complaint against Appellant.  In addition, the Bankruptcy Court lacked subject matter jurisdiction to hear and adjudicate the Bank's claim for declaratory judgment against Appellant.  In the alternative, should this Court determine the Bankruptcy Court had subject matter jurisdiction to hear and adjudicate the Banks's claim for declaratory relief, Appellant respectfully requests that this Court reverse the Bankruptcy Court's rulings that Appellant's shares were void for lack of consideration, and Appellant's shares are property of Debtor's bankruptcy estate.


Dated: August 6, 2021          By:    _/s/ John van Loben Sels_
                                      John van Loben Sels
                                      *Attorney for Appellant*,
                                      Anthony Nobles

## <u>CERTIFICATE OF COMPLIANCE</u>

I, John van Loben Sels, certify that, pursuant to Federal Rule of Bankruptcy Procedure 8015(h), appellant Anthony Nobles' Opening Brief is prepared in Times New Roman font, 14-point, and contains 7,235 words, exclusive of the cover page, tables, signature block, this certificate, and the proof of service (i.e., the portions exempted by FRBP 8015(g)).  In making this certification, I am relying on the word count feature of computer program used to prepare the brief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 6, 2021                    By:    */s/John van Loben Sels*
                                                           John van Loben Sels
                                                           *Attorney for Appellant*,
                                                           Anthony Nobles

23

## CERTIFICATE OF SERVICE

I am over 18 years of age. I am not a party to the within action. My business address is 2603 Main Street, Suite 1000, Irvine, California 92614. On August 6, 2021, I caused **APPELLANT'S OPENING BRIEF**, to be served on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

| | |
|---|---|
| Isaiah Z. Weedn<br>Michael M. Lauter<br>Stephen B. Sacks<br>SHEPPARD, MULLIN, RICHTER<br>& HAMPTON LLP<br>Four Embarcadero Center, 17th Floor<br>San Francisco, CA 94111<br>iweedn@sheppardmullin.com<br>mlauter@sheppardmullin.com<br>ssacks@sheppardmullin.com<br>*Attorneys for Appellee MUFG Union Bank* | Stephan A. Barber<br>JRG ATTORNEYS AT LAW<br>318 Cayuga Street<br>Salinas, CA 93901<br>steve@jrgattorneys.com<br>*Attorneys for Defendant Robert Brower, Sr.; Coastal Cypress Corporation (California and Delaware); Wilfred "Butch" Lindley; Patricia Brower; Patricia Brower Trust; American Commercial Properties, Inc.* |

**VIA U.S. MAIL:**
Judge M. Elaine Hammond
U.S. Courthouse, Room 3035
280 S. First St.
San Jose, CA 95112

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 6, 2021, in Irvine, California.

_____
Rita Marfatia

24