**Case No. 5:20-cv-06889-EJD**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

————————————

**ANTHONY NOBLES,**
*Appellant*,

vs.

**MUFG UNION BANK, N.A.,**
*Appellee.*

————————————

On Appeal from the U.S. Bankruptcy Court
Hon. M. Elaine Hammond
Adversary Case No. 17-05044

————————————

**APPELLEE MUFG UNION BANK, N.A.'S SUPPLEMENTAL BRIEF**

————————————

Isaiah Z. Weedn, SBN 229111
Sheppard Mullin Richter & Hampton LLP
650 Town Center Drive, 10th Floor
Costa Mesa, CA  92626
Tel: 714.513.5100
Fax: 714.513.5130
iweedn@sheppardmullin.com

Michael M. Lauter, SBN 246048
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111
Tel: 415.434.9100
Fax: 415.434.3947
mlauter@sheppardmullin.com

*Attorneys for Appellee*
*MUFG UNION BANK, N.A*

SMRH:4895-0729-4559.7

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................. 1

II.    RESPONSE TO ISSUES IN SUPPLEMENTAL BRIEFING ORDER ......... 1

     A.     Whether the injury alleged is direct or derivative. ............................... 1

           1.     The Injury Alleged is Direct to the Debtor's Bankruptcy Estate. ..................................................................................... 1

           2.     Bankruptcy Jurisdiction over this Adversary Proceeding Was Proper. ............................................................................ 4

     B.     Whether the issue of derivative standing may be waived. .................... 9

     C.     The proper appellate remedy if the Bank lacks standing. ................... 12

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Allen v. Wright*
    468 U.S. 737, 751 (1984).....................................................................................10

*Avikian v. Wtc Fin. Corp.*
    98 Cal. App. 4th 1108 (Cal. Ct. App. 2002).............................................................1

*Crain v. Electronic Memories & Magnetics Corp.*
    50 Cal.App.3d 509, 520-522 (Cal. Ct. App. 1975). ..................................................3

*Eastport Assocs. v. City of L.A. (In re Eastport Assocs.)*
    935 F.2d 1071 (9th Cir. 1991) .................................................................................6

*Elk Grove Unified Sch. Dist. v. Newdow*
    542 U.S. 1 (2004)...................................................................................................10

*Exec. Bens. Ins. Agency v. Arkison*
    573 U.S. 25 (2014)...................................................................................................9

*In re Fietz*
    852 F.2d 984 (9th Cir. 1988) ...................................................................................7

*Grocery Mfrs. Ass'n v. E.P.A.*
    693 F.3d 169 (D.C. Cir. 2012)................................................................................10

*Gupta v. Quincy Med. Ct.*, 858 F.3d 657, 662 (1st Cir. 2017) ....................................6

*Holistic Supplements, L.L.C. v. Stark*
    61 Cal.App.5th 530 (Cal. Ct. App. 2021)........................................................2, 3, 4

*Jones v. H.F. Ahmanson & Co.*
    1 Cal. 3d 93 (Cal. 1969)....................................................................................3, 4

*Lehman Bros. Special Financing, Inc. v. Bank of America N.A. (In re Lehman Bros. Holdings, Inc.)*
    544 B.R. 16 (Bankr. S.D.N.Y. 2015)........................................................................8

*Nelson v. Anderson*
    72 Cal. App. 4th 111 (Cal. Ct. App. 1999).......................................................3, 4

*In re Newcare Health Corp.*
244 B.R. 167 (1st Cir. BAP 2000) ....................................................................10

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*
458 U.S. 50 (1982) ...........................................................................................5

*Paclink Communications International, Inc. v. Superior Court*
90 Cal. App. 4th 958 (Cal. Ct. App. 2001) ........................................................1

*Pacor, Inc. v. Higgins*
743 F.2d 984, 994 (3d Cir. 1984)) ....................................................................7

*Singleton v. Wulff*
428 U.S. 106 (1976)........................................................................................10

*Smith v. Tele-Communication, Inc.*
134 Cal.App.3d 338 (Cal. Ct. App. 1982) .....................................................3, 4

*Stern v. Marshall*
564 U.S. 462 (2011)........................................................................................8, 9

*Sutter v. General Petroleum Corporation*
28 Cal.2d 525 (Cal. 1946).................................................................................2

*Sykes v. Meyler*
453 F. Supp. 2d 936 (E.D. Va. 2006) ..............................................................10

*Warth v. Seldin*
422 U.S. 490 (1975)........................................................................................10

*Wellness Int'l Network, Ltd. v. Sharif*
575 U.S. 665 (2015).........................................................................8, 9, 11, 12

*In re Wood*
825 F.2d 90, 96-97 (5th Cir. 1987) ..................................................................6

<u>Statutes</u>

11 U.S.C. .................................................................................................4, 5, 9, 13

11 U.S.C. § 541 .............................................................................................2, 6, 9

11 U.S.C. § 541(a) .............................................................................................8

11 U.S.C. § 1109(b) .................................................................................................4

28 U.S.C. §§ 157(a) ...........................................................................................5, 11

28 U.S.C. § 157(b) .............................................................................................8, 11

28 U.S.C. § 157(b)(1) .........................................................................................5, 7

28 U.S.C. § 157(b)(2) ...............................................................................................5

28 U.S.C. § 157(b)(2)(A), (E), and (O) ................................................................11

28 U.S.C. § 157(b)(2)(A), (O) .................................................................................7

28 U.S.C. § 157(c)(1) and (2) ..................................................................................6

28 U.S.C. § 1334(a) ..................................................................................................5

28 U.S.C. § 1334(b) .........................................................................................5, 11

28 U.S.C. § 1334(e)(1) ..................................................................................5, 8, 11

28 U.S.C. § 1367 .....................................................................................................12

28 U.S.C. § 1409(a) ................................................................................................12

28 U.S.C. § 2201 .....................................................................................................11

28 U.S.C. § 2202 .....................................................................................................11

Cal. Corp. Code § 409...............................................................................................2

Other Authorities

Gen. Order 24, U.S.D.C., N. Dist. Cal.....................................................................5

H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977) .............................................6

Rule 5011-1 .............................................................................................................11

# I.
# INTRODUCTION

Plaintiff/Appellee MUFG Union Bank, N.A. (the "Bank") submits this brief in response to this Court's Order re Supplemental Briefing entered on April 13, 2023 as ECF No. 23.  The Bank responds to each of the questions in this Court's Supplemental Briefing Order in turn below.

# II.
# RESPONSE TO ISSUES IN SUPPLEMENTAL BRIEFING ORDER

## A.    Whether the injury alleged is direct or derivative.

Question No. 1 in this Court's Supplemental Briefing Order asks:  *"Whether the injury alleged – the dilution of Debtor Robert Brower, Sr.'s ('Brower') ownership interest in Coastal Cypress Corporation ('Coastal') – is a direct injury to Brower's bankruptcy estate, or if it is an injury to Coastal such that claims related to the dilution may only be brought derivatively on behalf of Coastal."*

### 1.    The Injury Alleged is Direct to the Debtor's Bankruptcy Estate.

In California, a claim by a shareholder of a corporation is derivative if the "gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets. … The stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual." *Paclink Communications International, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 964 (Cal. Ct. App. 2001) (internal citations and quotations omitted).  *See also, Avikian v. Wtc Fin. Corp.*, 98 Cal. App. 4th 1108, 1115 (Cal. Ct. App. 2002) (same).  Further, "a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for

-1-

the same wrong." *Sutter v. General Petroleum Corporation*, 28 Cal.2d 525, 532 (Cal. 1946).

Here, the claim was clearly a direct one by the Bank, standing in the shoes of the Debtor, Brower. The Bank did not allege a generalized injury to Coastal's assets (or any injury to Coastal's assets at all) or a generalized injury to Coastal's stock. What the Bank alleged in its complaint was that the Debtor was concealing the extent of his interest in Coastal (claiming it to be only 24% when in fact it was 100%) by falsely claiming that various ownership interests in Coastal were held by his wife, friends, and business associates, such as the Appellant Mr. Nobles. (Appellant's Appendix ("AA"), 0015-0016, at ¶¶ 22-26). The precise way in which this was proven, with respect to the 50,000 shares allegedly issued to Mr. Nobles that are the subject of this appeal, was to demonstrate that Coastal never received any consideration for the shares purportedly issued to Mr. Nobles, rendering them void under California Corporations Code section 409. (AA, 478-489). In other words, the issue adjudicated by the Bankruptcy Court was personal to the Debtor, Mr. Brower – *i.e.*, how much of Coastal did the Debtor own? Indeed, the claim for relief at issue here was a claim seeking a declaration that 100% of the issued and outstanding stock of Coastal was owned by Mr. Brower and therefore was property of his bankruptcy estate under Section 541 of the Bankruptcy Code. (AA, 0017, 0018, 0020). In essence, the issue here was no different than if Appellant had stolen a stock certificate from Brower – ultimately the determination being made by the Bankruptcy Court is whether Brower (the Debtor) or Mr. Nobles owns the 50,000 Coastal shares at issue.

Case law supports the above analysis. In *Holistic Supplements, L.L.C. v. Stark*, 61 Cal.App.5th 530 (Cal. Ct. App. 2021), the California Court of Appeal found an equityholder's action for conversion, unfair competition, and declaratory relief based on the conversion of an LLC to a corporation to be direct as opposed

to derivative because the gravamen of the plaintiff's claims were the injury inflicted on her when the defendants willfully took her membership interest in the LLC and converted it to a corporation and then a mutual benefit corporation. *Id*. at 542-543. The court noted that "[a]s personal property, Kersey's membership interest could be subject to individual claims based on theft of that interest." *Id*. at 542.

Similarly, the California Supreme Court in *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 107 (Cal. 1969) found that a claim by a minority shareholder against majority shareholders for damage to the value of her shares by dint of a corporate reorganization orchestrated by the majority shareholders was a direct claim. The Court explained that the action was direct because "the gravamen of [plaintiff's] cause of action is injury to herself and the other minority stockholders." *Id*. The Court noted also that "[t]he individual wrong necessary to support a suit by a shareholder need not be unique to that plaintiff. The same injury may affect a substantial number of shareholders. *Id*.

Further, in *Smith v. Tele-Communication, Inc.*, 134 Cal.App.3d 338, 343 (Cal. Ct. App. 1982), the California Court of Appeal found a minority shareholder's lawsuit against a majority shareholder for manipulating a transaction that had the effect of diluting the minority shareholder's stake in the company to be a direct claim because the plaintiff shareholder did "not contend that the diminishment in his share of the assets reflects an injury to [the corporation] and a resultant depreciation in the value of its stock. …. [T]he gravamen of the causes of action is injury to Smith as the only minority shareholder." *Id*.

In *Nelson v. Anderson*, 72 Cal. App. 4th 111, 127 (Cal. Ct. App. 1999), the California Court of Appeal further explained that: "Whether there is one minority shareholder or many, an action is individual only if the stock of the individual plaintiff or plaintiffs is the only stock affected adversely." *Id.*, citing *Crain v.*

*Electronic Memories & Magnetics Corp.*, 50 Cal.App.3d 509, 520-522 (Cal. Ct. App. 1975).

Similar to the situations in *Stark*, *Jones*, and *Smith*, the gravamen of the declaratory relief action in this case was personal to Brower – *i.e.*, an allegation that Appellant Nobles and others colluded with Brower to dilute *Brower's share* of Coastal.  Moreover, as noted in *Nelson*, this action is direct because Brower's stock was the only stock affected by Brower's scheme to conceal the extent of his interest in Coastal.  Indeed, the declaratory relief action at issue here is necessarily direct and individual to Brower, because as the 100% shareholder prior to the scheme to defraud creditors by claiming to only own 24% of Coastal, Brower *was the only party affected by the dilution*.  The declaratory relief claim is therefore plainly a direct claim of Brower's, which the Bank was entitled to bring on behalf of Brower's bankruptcy estate pursuant to the Bankruptcy Court's grant of standing to the Bank to do so.

2.    <u>Bankruptcy Jurisdiction over this Adversary Proceeding Was Proper.</u>

The Court appears to have raised the direct v. derivative standing issue as part of an analysis of whether the Bankruptcy Court had jurisdiction to issue the judgment that is the subject of this appeal.  Accordingly, it is important to explain that under the unique construction of standing and jurisdiction in the bankruptcy context, both are proper here.

Standing is a broad concept in chapter 11 cases.  *See*, 11 U.S.C. § 1109(b) ("[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.")  Further, in this case, the Bankruptcy Court specifically

granted the Bank's motion to bring the adversary action at issue on behalf of the Debtor's estate.  (BA, 3-5).

Bankruptcy jurisdiction is also proper here.  Bankruptcy jurisdiction is unique, and Congress has crafted a statutory scheme that is meant to address constitutional concerns raised by early Bankruptcy Code cases such as *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).  Under the scheme, as revised post-*Marathon*, district courts have original and exclusive jurisdiction over all bankruptcy cases (28 U.S.C. § 1334(a)), and original but non-exclusive jurisdiction over "all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under" the Bankruptcy Code (28 U.S.C. § 1334(b)).  Furthermore, district courts have *exclusive* jurisdiction over "all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."  28 U.S.C. § 1334(e)(1).

District courts may then adopt standing orders of reference that refer all bankruptcy cases and all civil proceedings arising under, arising in, or related to all bankruptcy cases in their district to the bankruptcy court in their district.  28 U.S.C. § 157(a).  Indeed, this district has just this type of standing order of reference.  *See*, General Order 24, United States District Court for the Northern District of California.  The statutory scheme goes on to explain that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 … and may enter appropriate orders and judgments."  28 U.S.C. § 157(b)(1).  The non-exhaustive list of specified "core proceedings" includes "(A) matters concerning the administration of the estate" and "(O) other proceedings affecting the liquidation of the assets of the estate…" 28 U.S.C. § 157(b)(2).  For "related to" proceedings, a bankruptcy court may issue proposed findings of fact and conclusions of law to the district court, and may also "hear and determine" and "enter appropriate orders" in "related to" proceedings

with the consent of the parties.  28 U.S.C. § 157(c)(1) and (2).  Based on these standards, the Bankruptcy Court below plainly had jurisdiction over this adversary proceeding seeking a declaration that 100% of the equity in Coastal was property of the Debtor's estate.

First, the Bankruptcy Court had "arising under" jurisdiction over the adversary proceeding at issue.  Congress in enacting the Bankruptcy Code explained that "arising under" jurisdiction encompassed "any matter under which a claim is made under a provision of title 11."  H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977).  In other words, "arising under" jurisdiction proceedings where "the Bankruptcy Code itself creates the cause of action."  Gupta v. Quincy Med. Ct., 858 F.3d 657, 662 (1st Cir. 2017).  The adversary proceeding that is the subject of this appeal sought a declaration that 100% of the equity in Coastal was property of the Debtor's bankruptcy estate under Section 541 of the Bankruptcy Code – an issue that arises under Section 541 of the Bankruptcy Code.  "Arising under" jurisdiction therefore existed.

Second, even if "arising under" jurisdiction did not exist, "arising in" jurisdiction plainly did.  The Ninth Circuit has explained that "arising in" is a reference to those 'administrative' matters that arise *only* in bankruptcy cases.  In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."  *Eastport Assocs. v. City of L.A. (In re Eastport Assocs.)*, 935 F.2d 1071, 1076 (9th Cir. 1991) (emphasis original) (quoting *In re Wood*, 825 F.2d 90, 96-97 (5th Cir. 1987)).  Even if one could view the underlying action as a state law action not created by the Bankruptcy Code such that no "arising under" jurisdiction exists, "arising in" jurisdiction clearly exists because the issue of whether something is property of a bankruptcy estate under Section 541 of the Bankruptcy Code exists only in bankruptcy.

Moreover, the adversary proceeding was also clearly a "core proceeding", as it concerned the administration of the estate and affected the liquidation of the assets of the estate – indeed, it determined the extent of the Debtor's interest in the main asset of the Debtor's estate, effectively quadrupling that interest from 24% to 100%. 28 U.S.C. § 157(b)(2)(A), (O). The Bankruptcy Court thus had the power to "hear and determine" the instant adversary proceeding, and "enter appropriate orders and judgments" in it. 28 U.S.C. § 157(b)(1).

In addition, "related to" jurisdiction also plainly exists. As the Ninth Circuit has explained, "the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Fietz*, 852 F.2d 984, 994 (9th Cir. 1988) ("the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*." (emphasis original) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Here, related to jurisdiction exists because the intent of the adversary proceeding was to unwind the Debtor's fraudulent attempt to conceal his assets from creditors by claiming that his wife and friends owned them. In particular, with respect to what the Debtor admitted was his bankruptcy estate's largest asset – his interest in Coastal – the adversary proceeding sought a declaration that the Debtor owned not only 24% of Coastal as he claimed, but in reality 100% as the Bankruptcy Court did eventually find. (AA, 0017, 0018, 0020). The outcome thus did have an effect on the Debtor's estate being administered in his bankruptcy case – indeed, it was likely the single largest event in his case, in terms of its impact on creditor recoveries.

Finally, the Bankruptcy Court's exclusive in rem jurisdiction over property of the Debtor's estate under 28 U.S.C. § 1334(e)(1) also supports its jurisdiction in this case.  Section 1334(e)(1) gives the bankruptcy court in rem jurisdiction to determine rights to property of the estate even if the bankruptcy court does not have in personam jurisdiction over a party claiming rights to that property. *Lehman Bros. Special Financing, Inc. v. Bank of America N.A. (In re Lehman Bros. Holdings, Inc.)*, 544 B.R. 16, 43 (Bankr. S.D.N.Y. 2015).  "Property of the estate" in a bankruptcy case is an extremely broad concept that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a).  Here, the injury alleged in the adversary complaint was the Debtor's false assertion that he  owned only 24% of Coastal and that his wife and friends (including Nobles) owned the other 76%, when in fact the Debtor owned 100% of Coastal.  The Bankruptcy Court agreed, finding that the Debtor was the 100% owner of Coastal and, among other things, that the 50,000 shares issued to Nobles were void.  The Bankruptcy Court plainly has in rem jurisdiction over property that the Debtor attempts to conceal in this manner.

As the "arising under" and "related to" jurisdictional analysis above make clear, the statutory jurisdictional scheme is not necessarily determinative here. However, the jurisdictional scheme has been thoroughly tested and examined from a constitutional perspective, including in several decisions by the United States Supreme Court, most notably the Court's decisions in *Stern v. Marshall*, 564 U.S. 462 (2011) and *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 691 (2015).

In *Stern*, the Supreme Court found that certain state law claims held by the debtor's estate (in *Stern*, state law counterclaims to a creditor's proof of claim), could not be finally resolved by a bankruptcy judge, even though they were denominated as "core proceedings" under 28 U.S.C. § 157(b).  *Stern*, 564 U.S. at 469.  The Supreme Court later clarified that as to such "*Stern* claims" (*i.e.*, core

proceedings that a bankruptcy court lacks the constitutional power to finally resolve), a bankruptcy court may still issue proposed findings of fact and conclusions of law for a district court to consider and potentially adopt as its own ruling. *Exec. Bens. Ins. Agency v. Arkison*, 573 U.S. 25, 28 (2014). Further, the Supreme Court also held that a bankruptcy court can issue a final judgment on a *Stern* claim with the parties' consent, which consent may be implied by the parties' conduct in the case below. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 691 (2015).

This case does not involve a *Stern* claim. It is not a state law claim that Brower could pursue personally outside of bankruptcy, like the claim at issue in *Stern*. Rather, it is a declaratory relief claim about whether 24% or 100% of the Coastal stock was property of the Debtor's estate under Section 541 of the Bankruptcy Code; a claim that arises only under the Bankruptcy Code in a bankruptcy case filed by Brower. But even if the claim at issue was a *Stern* claim, the Appellant here clearly consented to the Bankruptcy Court's jurisdiction to finally resolve it, as contemplated by the Supreme Court's *Wellness* decision, and as discussed in the following section.

## B.    Whether the issue of derivative standing may be waived.

Question No. 2 in this Court's Supplemental Briefing Order asks: *"Whether the issue of derivative standing is a matter of constitutional standing that may not be waived, or if it is a matter of prudential standing that may be waived or otherwise forfeited."*

As explained above, the injury alleged is a dilution of the Debtor's shares in Coastal, which is an injury that is clearly direct to the Debtor. However, even in the event the injury is deemed to be derivative, the issue of derivative standing is a matter of prudential standing that may be waived (and was, in fact, waived in this

case), rather than a constitutional standing issue. *Singleton v. Wulff*, 428 U.S. 106 (1976); *Warth v. Seldin*, 422 U.S. 490 (1975).

Prudential standing limitations are not based on the Constitution, but rather on policy considerations. In contrast to the constitutional requirements for standing, which are primarily concerned with whether the plaintiff has suffered a concrete and particularized injury that is causally linked to the defendant's conduct, prudential standing limitations "are self-imposed rules of judicial restraint, and principally concern whether the litigant (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches." *In re Newcare Health Corp.*, 244 B.R. 167, 170 (1st Cir. BAP 2000).

The distinction between direct and derivative standing is an example of a prudential limitation that reflects the courts' discretion to determine whether a plaintiff has a sufficient interest in a case to justify judicial intervention. This is because the determination of whether an injury is direct or derivative is a matter of judicial discretion and requires a case-by-case analysis. *Sykes v. Meyler*, 453 F. Supp. 2d 936, 941 (E.D. Va. 2006); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 2 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)) ("The Court's prudential standing jurisprudence encompasses, inter alia, 'the general prohibition on a litigant's raising another person's legal rights' ...."). Therefore, the distinction between derivative and direct standing is a prudential limitation. Because prudential standing is not jurisdictional, it can be waived and need not be considered by the court if the defendant or respondent does not assert it. *Grocery Mfrs. Ass'n v. E.P.A.*, 693 F.3d 169, 182 (D.C. Cir. 2012).

In this case, any prudential standing concerns are moot because all parties in interest were involved in the underlying litigation, including the Appellant and Coastal. No "necessary party" whose interests were affected was omitted from the adversary proceeding. Accordingly, there could be no legitimate concern that the Bank was asserting the rights or legal interests of others. For this reason, the key inquiry is whether the bankruptcy court had jurisdiction to decide the matters at issue in the adversary case. It clearly did.

It is well established that parties can consent to the jurisdiction of bankruptcy courts over claims that would otherwise fall outside of their jurisdiction. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015). In this case, Appellant expressly consented to the Bankruptcy Court's jurisdiction. In its Amended Complaint, the Bank made the following allegations:

> *10. This adversary proceeding arises under title 11, or arises in or is related to the Bankruptcy Case, within the meaning of 28 U.S.C. § 1334(b). This Court therefore has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b), 1334(b) and 1334(e) and Rule 5011-1 of the Bankruptcy Local Rules of the United States District Court for the Northern District of California, including jurisdiction to enter a final judgment.*
>
> *11. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.*
>
> *12. This is an adversary proceeding to obtain declaratory that various property interests controlled by the Debtor are property of the estate and therefore is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O). To the extent necessary, Plaintiff consents to entry of a final judgment by this Court.*

> *13. For claims arising under state law, this Court also has jurisdiction under 28 U.S.C. § 1367.*
>
> *14. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).*
>
> *15. The Defendants are subject to the jurisdiction of this Court.*

(AA, 0014, at ¶¶ 10-15). And in the Answer to Amended Complaint Appellant jointly filed with defendant Babcock, Appellant *admitted* all of the aforementioned allegations. (AA, 0024, at ¶¶ 10-15). Appellant then proceeded to litigate this matter all the way to judgment without raising any jurisdictional objection. Appellant only raised his jurisdictional objection for the first time on appeal, after he lost at the Bankruptcy Court level.

In summary, although the issue of derivative standing is a prudential limitation on standing, which can be and was waived in this case, the issue is effectively moot because the parties knowingly consented to the Bankruptcy Court's jurisdiction over this matter, a practice the Supreme Court endorsed in the *Wellness* case.

## C.    <u>The proper appellate remedy if the Bank lacks standing.</u>

Question No. 3 in this Court's Supplemental Briefing Order asks:  *"If it is determined that Appellant[1] lacks standing to directly pursue claims related to the dilution of ownership interests and can only pursue such claims derivatively, what is the proper appellate remedy for addressing that determination, and what effect does that determination have on other issues in the adversary proceedings?"*

---

[1] Note that it appears the Court intended to say "Appellee" here.

As detailed above, the Court should conclude that Appellee had standing to directly pursue claims related to the fraudulent dilution of Debtor's ownership interest in Coastal.  However, if this Court concluded that the claim could only be pursued via a derivative action by the Debtor on behalf of Coastal (both of whom were actual parties to the adversary proceeding), the proper appellate remedy would be to permit the liquidating trustee appointed in the confirmed chapter 11 plan in the Debtor's case to intervene in this appeal to seek this Court's approval of its derivative standing to seek such a determination on behalf of Coastal, or simply to permit the liquidating trustee to cause Coastal (which is controlled by the liquidating trustee as its 100% stockholder) to join the action as a plaintiff and appellee in order to cure any standing issue.

Dated:  May 5, 2023

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____ */s/ Michael M. Lauter* _____
            MICHAEL M. LAUTER
            Attorneys for Respondent
            MUFG UNION BANK, N.A.

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Michael M. Lauter, certify that, pursuant to Federal Rule of Bankruptcy Procedure 8015(h), appellee MUFG Union Bank, N.A.'s Supplemental Brief is prepared in Times New Roman font, 14-point, and contains 3,856 words, exclusive of the cover page, tables, corporate disclosure statement, signature block, this certificate, and the proof of service (*i.e.*, the portions exempted by FRBP 8015(g)). In making this certification, I am relying on the word count of the computer program used to prepare the brief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  May 5, 2023

SHEPPARD MULLIN RICHTER & HAMPTON LLP


By   _____*/s/ Michael M. Lauter*_____
MICHAEL M. LAUTER
Attorneys for Respondent
MUFG UNION BANK, N.A.

## CERTIFICATE OF SERVICE

**United States District Court, Northern District of California**
**Case No. 5:20-cv-06889-EJD**

I am employed in the County of Orange; I am over the age of eighteen years and not a party to the above entitled action; my business address is 650 Town Center Drive, 10th Floor, Costa Mesa, California 92626.

On May 5, 2023, I served the following document(s) described as **APPELLEE MUFG UNION BANK, N.A.'S SUPPLEMENTAL BRIEF** on the interested party(ies) in this action by CM/ECF Notice Of Electronic Filing.  I electronically filed the document with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

| *Attorneys for Appellant Anthony Nobles* | *Attorneys for Defendant Robert Brower, Sr.; Coastal Cypress Corporation (California and Delaware); Wilfred "Butch" Lindley; Patricia Brower; Patricia Brower Trust; American Commercial Properties, Inc.* |
|---|---|
| John van Loben Sels<br>Fish IP Law, LLP<br>2603 Main Street, Suite 1000<br>Irvine, CA  92614<br>jvanlovensels@fishiplaw.com<br>Telephone:  949.943.8300<br>Facsimile:  949.943.8358 | Stephan A. Barber<br>JRG Attorneys At Law<br>318 Cayuga Street<br>Salinas, CA  93901<br>steve@jrgattorneys.com |

*Served via U.S. Mail*
Judge M. Elaine Hammond
U.S. Courthouse, Room 3035
280 S. First St.
San Jose, CA 95113

SMRH:4895-0729-4559.7

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 5, 2023, at Costa Mesa, California.

_____

Monika Grisotti